IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LISA RENEE YANCEY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>DIVISION OF CHILD AND FAMILY SERVICES; JUDGE DANE C. NOLAN; UTAH COURT OF APPEALS; and UTAH SUPREME COURT,<br><br>　　　　Defendants. | REPORT AND RECOMMENDATION<br><br>Case No. 2:08-cv-698-DB-PMW<br><br><br><br>District Judge Dee Benson<br><br>Magistrate Judge Paul M. Warner |

District Judge Dee Benson referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1]  The specific matters before the court are Lisa Renee Yancey's ("Plaintiff") motion for appointment of counsel[2] and motion for service of process.[3]

At the outset, the court notes that Plaintiff has been permitted to proceed in forma pauperis ("IFP") in this case under 28 U.S.C. § 1915 ("IFP statute").[4]  Accordingly, and in addition to the specific matters referenced above, the court will address the sufficiency of Plaintiff's complaint under the authority of the IFP statute.  *See id*. § 1915(e)(2)(B)(ii).

---

[1] *See* docket no. 6.

[2] *See* docket no. 4.

[3] *See* docket no. 5.

[4] *See* docket nos. 1, 2.

The court also recognizes that Plaintiff is proceeding pro se in this case. Consequently, the court will construe her pleadings and other submissions liberally. *See, e.g.*, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

## BACKGROUND

Plaintiff's complaint, which indicates that this case is being brought pursuant to 42 U.S.C. § 1983, names the following parties as defendants: the Utah Division of Child and Family Services ("DCFS"), Utah Third District Juvenile Court Judge Dane C. Nolan ("Judge Nolan"), the Utah Court of Appeals, and the Utah Supreme Court (collectively, "Defendants"). The events underlying Plaintiff's complaint appear to stem from the termination of her parental rights with respect to her daughter.

As to DCFS, Plaintiff indicates that it was not acting under the authority or color of state law at the time the events underlying her claims occurred.[5] Although Plaintiff does make a sole reference to "motions" filed by DCFS before Judge Nolan,[6] Plaintiff has not included any other allegations about conduct undertaken by DCFS or its employees.

Concerning Judge Nolan, Plaintiff indicates that he was not acting under the authority or color of state law at the time the events underlying her claims occurred.[7] Plaintiff alleges that Judge Nolan "disregard[ed] the facts" in ruling on motions brought by DCFS in the parental

---

[5] *See* docket no. 3 at 2.

[6] *Id.* at 3.

[7] *See id.* at 2.

rights termination proceedings in Utah Third District Juvenile Court.[8]  Plaintiff also alleges that Judge Nolan disregarded Plaintiff's "disability rights."[9]  More specifically, Plaintiff alleges that although she sent Judge Nolan written notice that her "parental rights hearing" needed to be rescheduled because of her "medical disability," Judge Nolan did not reschedule the hearing.[10]  Plaintiff claims that Judge Nolan proceeded with the originally scheduled hearing, terminated Plaintiff's parental rights, and closed Plaintiff's case.[11]  Plaintiff further alleges that after the above-referenced hearing, she sent a letter to Judge Nolan indicating her disagreement with the decision to terminate her parental rights, along with a copy of her medical records to explain the nature of her disability.[12]  Plaintiff asserts that she also filed a motion with Judge Nolan requesting that her parental rights be reinstated, but was told by Judge Nolan's "clerk" that Judge Nolan would "ignore" the motion.[13]  Plaintiff alleges that she received no response to those communications.[14]

With respect to both the Utah Court of Appeals and the Utah Supreme Court, Plaintiff indicates that neither one was acting under color of state law at the time the events underlying her

---

[8]  *Id*. at 3.

[9]  *Id*. at 4.

[10]  *Id*.

[11]  *See id*.

[12]  *See id*.

[13]  *Id*. at 6.

[14]  *See id*.

claims occurred.[15]  Plaintiff sole allegation concerning the Utah Court of Appeals is that it "disregarded [her] first appeal and requested [that she] file a new one after the time expired."[16]  Plaintiff's sole allegation with respect to the Utah Supreme Court is that it "did not consider [her] facts and proof submitted with the entire case, even at the beginning."[17]

In the portion of her complaint entitled, "INJURY," Plaintiff states:  "I've suffered emotionally, mentally and financially, and [endured] pain and suffering.  This also added insult to injury to my post-partum blues.  Post-partum blues also had an effect on my disability at the time [the events] occurred."[18]  In her request for relief, Plaintiff requests relief from the final order terminating her parental rights and the return of full custody of her daughter.[19]

## ANALYSIS

First, the court will address Plaintiff's motion for appointment of counsel.  Second, because Plaintiff is proceeding IFP, the court will address the sufficiency of her complaint under the authority of the IFP statute.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).  Finally, the court will address Plaintiff's motion for service of process.

---

[15] *See id*. at 3.

[16] *Id*. at 5.

[17] *Id*.

[18] *Id*.

[19] *Id*. at 6-7.

### I. Motion for Appointment of Counsel

On the same date her complaint was filed, Plaintiff filed a motion for appointment of counsel. "The appointment of counsel in a civil case is left to the sound discretion of the district court." *Shabazz v. Askins*, 14 F.3d 533, 535 (10th Cir. 1994). Although "[t]here is no constitutional right to appointed counsel in a civil case," *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1988) (per curiam), the court may appoint an attorney to represent a litigant who is unable to afford counsel. *See* 28 U.S.C. § 1915(e)(1). When deciding whether to appoint counsel, the court must consider certain factors, "including the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (quotations and citations omitted).

The court turns to considering those factors in this case. First, the merits of Plaintiff's claims will be addressed in the next section of this report and recommendation. In that section, the court will conclude that Plaintiff's complaint fails to state any claims upon which relief can be granted. Second, concerning Plaintiff's ability to present her claims, there is no indication that she is incapacitated or unable to pursue this case adequately. Finally, with respect to the complexity of this case, the court has determined that the factual and legal issues raised by Plaintiff's complaint do not appear to be complicated or difficult to explain. Further, at this stage of Plaintiff's case, the court is concerned only with the sufficiency of Plaintiff's allegations, and the court does not believe that appointed counsel would materially assist Plaintiff in describing the facts surrounding her alleged injuries. *See, e.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th

Cir. 1991) (stating that "a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury"). For these reasons, Plaintiff's motion for appointment of counsel should be denied.

## II. Review of Complaint Under IFP Statute

Whenever the court authorizes a party to proceed without the prepayment of fees under the IFP statute, the court is required to "dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In determining whether a complaint fails to state a claim for relief under the IFP statute, the court employs the same standard used for analyzing motions to dismiss for failure to state a claim under rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007). Under that standard, the court "look[s] for plausibility in th[e] complaint." *Id*. at 1218 (quotations and citations omitted) (second alteration in original). More specifically, the court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)) (other quotations and citation omitted) (second and third alterations in original).

In undertaking that analysis, the court is mindful that Plaintiff is proceeding pro se and that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Bellmon*, 935 F.2d at 1110; *see also, e.g.*, *Ledbetter*, 318 F.3d at 1187. At the same time, however, it is not "the proper function of the

district court to assume the role of advocate for the pro se litigant," *Bellmon*, 935 F.2d at 1110, and the court "will not supply additional facts, nor will [it] construct a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam). Further,

> [t]he broad reading of [a pro se] plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . . [C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding [her] alleged injury, and [she] must provide such facts if the court is to determine whether [she] makes out a claim on which relief can be granted. Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not [her] conclusory allegations.

*Bellmon*, 935 F.2d at 1110 (citations omitted).

With those principles in mind, the court turns to analyzing Plaintiff's complaint. The following discussion provides several alternative reasons supporting the court's final conclusion and recommendation with respect to Plaintiff's complaint.[20]

---

[20] As an initial matter with respect to the sufficiency of Plaintiff's complaint, the court notes Plaintiff's failure to indicate that any of Defendants' alleged conduct was undertaken under color or authority of state law. That failure is typically detrimental to § 1983 claims. *See, e.g.*, *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). However, a pro se plaintiff's failure to identify the proper legal theory is not a ground for dismissal. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Further, Plaintiff could correct the defects in her complaint by way of a simple amendment. For these reasons, the court does not consider this failure in reaching its overall conclusion with respect to Plaintiff's complaint.

### A. All Claims Against All Defendants

The court has determined that Plaintiff's complaint, in its entirety, fails to state claims upon which relief can be granted for two reasons. First, even a liberal construction of Plaintiff's complaint leads the court to the conclusion that she has failed to provide sufficient factual allegations to state a claim on which relief can be based. Second, all of Plaintiff's claims are barred by the *Rooker-Feldman* doctrine.

### 1. Insufficient Factual Allegations

The court has recognized its duty to construe Plaintiff's complaint liberally. *See, e.g.*, *Ledbetter*, 318 F.3d at 1187; *Bellmon*, 935 F.2d at 1110. However, in recounting the background of this case above, the court set forth the sum total of the allegations contained in Plaintiff's complaint. Even if the court construes those allegations liberally, the court has determined that they fall well short of stating claims upon which relief can be granted. Indeed, a review of the complaint reveals that nearly all of Plaintiff's allegations are conclusory statements and that Plaintiff has failed to provide the court with any well-pleaded factual contentions to describe the facts surrounding her alleged injuries. *See Bellmon*, 935 F.2d at 1110. As a result, the court concludes that Plaintiff's complaint, in its entirety, fails to state any claims upon which relief can be granted.

### 2. *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine establishes, as a matter of subject-matter jurisdiction, that only the United States Supreme Court has appellate authority to review a state-court decision." *Merrill-Lynch Bus. Fin. Servs. v. Nudell*, 363 F.3d 1072, 1074-75 (10th Cir. 2004) (footnote

omitted); *see also* 28 U.S.C. § 1257(a) (providing that the Supreme Court has jurisdiction to review "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had"); *Bolden v. City of Topeka*, 441 F.3d 1129, 1139 (10th Cir. 2006) ("The *Rooker-Feldman* doctrine prohibits federal suits that amount to appeals of state-court judgments."); *Warnick v. Briggs*, No. 2:04-cv-360-DAK, 2007 U.S. Dist. LEXIS 80970, at *23-24 (D. Utah Oct. 30, 2007). "Thus, in applying the *Rooker-Feldman* doctrine, [the court] focus[es] on whether the lower federal court, if it adjudicated [the] plaintiff's claims, would effectively act as an appellate court reviewing the state court disposition." *Nudell*, 363 F.3d at 1075.

In *Warnick*, a district judge in this court recognized several instances when other courts, including the Tenth Circuit, had applied the *Rooker-Feldman* doctrine in cases involving juvenile court determinations. *See Warnick*, 2007 U.S. Dist. LEXIS 80970, at *25-26. The *Warnick* court went on to conclude that the *Rooker-Feldman* doctrine barred any of the plaintiffs' claims that derived from the removal of the plaintiffs' child from their custody because the state juvenile court had already ruled upon that issue. *See id*. at *27-29. In light of the juvenile court's ruling, the *Warnick* court concluded that if it adjudicated the plaintiffs' claims relating to their child's removal, it "would effectively act as an appellate court in reviewing the juvenile court's disposition." *Id*. at *28.

In this case, all of the allegations in Plaintiff's complaint center on the termination of her parental rights. However, Plaintiff has admitted in her complaint that Judge Nolan already ruled on that issue in the juvenile court proceedings. Plaintiff has also alleged that she appealed that ruling to both the Utah Court of Appeals and the Utah Supreme Court. Like the court in

*Warnick*, this court concludes that if it were to adjudicate Plaintiff's claims in this case, it "would effectively act as an appellate court in reviewing the juvenile court's disposition." *Id*. Accordingly, the court has determined that the *Rooker-Feldman* doctrine bars Plaintiff's claims in this case.

For those two reasons, the court concludes that Plaintiff's complaint, in its entirety, fails to state claims upon which relief can be granted.

### B. Claims Against DCFS

The court also concludes that Plaintiff has failed to state claims upon which relief can be granted against DCFS for two reasons: (1) DCFS is entitled to Eleventh Amendment immunity and (2) DCFS is not a "person" within the meaning of § 1983.

### 1. Eleventh Amendment Immunity

"With certain limited exceptions, the Eleventh Amendment prohibits a citizen from filing suit against a state in federal court. To assert Eleventh Amendment immunity, a defendant must qualify as a state or an 'arm' of a state." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citations omitted). With respect to the limited exceptions noted above, the Tenth Circuit has "recognized two primary circumstances in which a citizen may sue a state without offending Eleventh Amendment immunity. Congress may abrogate a state's Eleventh Amendment immunity. A state may also waive its Eleventh Amendment immunity and consent to be sued." *Id*. at 1181 (citations omitted).

The State of Utah created DCFS as a "division[] . . . within the Department of Human Services." Utah Code § 62A-1-105(2)(b). The Governmental Immunity Act of Utah defines the

"'State'" to include "the [S]tate of Utah, and . . . each office, department, division, agency, authority, commission, board, institution, hospital, college, university, Children's Justice Center, or other instrumentality of the state." *Id*. § 63G-7-102(9). Accordingly, DCFS qualifies as an arm of the State of Utah and, therefore, is entitled to Eleventh Amendment immunity.

In addition, neither exception to the application of Eleventh Amendment immunity applies in this case. The first exception does not apply because Congress did not abrogate the states' Eleventh Amendment immunity when it enacted § 1983. *See, e.g.*, *Quern v. Jordan*, 440 U.S. 332, 345 (1979); *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998). The second exception is likewise inapplicable because there is no indication that either the State of Utah or DCFS has waived Eleventh Amendment immunity. *See* Utah Code § 63G-7-501(1) (providing that state district courts have "exclusive, original jurisdiction" over any actions brought under the Governmental Immunity Act of Utah); *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1233 (10th Cir. 1999) ("We have previously held that Utah has not waived its Eleventh Amendment immunity by statute.").

For these reasons, the court concludes that Plaintiff's claims against DCFS are barred by the Eleventh Amendment.

### 2.  DCFS Not a "Person" Within Meaning of § 1983

"Neither the state, nor a governmental entity that is an arm of the state for Eleventh Amendment purposes, nor a state official who acts in his or her official capacity, is a 'person' within the meaning of [§] 1983." *Harris v. Champion*, 51 F.3d 901, 905-06 (10th Cir. 1995); *see*

*also* 42 U.S.C. § 1983 (providing that it applies to "[e]very person" in violation of its provisions); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).

The court has already concluded that DCFS qualifies as an arm of the State of Utah for purposes of Eleventh Amendment immunity. Therefore, it follows that DCFS is not a "person" within the meaning of § 1983. *See Champion*, 51 F.3d at 905-06. As a result, Plaintiff's § 1983 claims against DCFS must fail.

Based on the foregoing, the court concludes that Plaintiff's complaint fails to state claims upon which relief can be granted against DCFS.

### C. Claims Against Judge Nolan, Utah Court of Appeals, and Utah Supreme Court

The court has determined that the doctrine of judicial immunity bars Plaintiff's claims against Judge Nolan, the Utah Court of Appeals, and the Utah Supreme Court.

"Under the common law, judges are absolutely immune from suit on any claim based on the conduct of their office, including allegations that a decision is erroneous, malicious, or in excess of their judicial authority." *Christensen v. Ward*, 916 F.2d 1462, 1473 (10th Cir. 1990); *see also Mireles v. Waco*, 502 U.S. 9, 9-12 (1991) (per curiam). This immunity ensures "that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles*, 502 U.S. at 10 (quotations and citation omitted). "[J]udicial immunity is not overcome by allegations of bad faith or malice . . . ." *Id*. at 11. "Only accusations that a judge was not acting in his judicial capacity or that he acted in the complete absence of all jurisdiction can overcome absolute immunity." *Guttman v. Khalsa*, 446 F.3d 1027, 1034 (10th Cir. 2006).

The great majority of the allegations contained in Plaintiff's complaint focus on the actions of Judge Nolan. Plaintiff also includes allegations about conduct undertaken by the Utah Court of Appeals and the Utah Supreme Court, which the court construes to be allegations of conduct undertaken by judges on those two courts. All of those allegations describe actions undertaken by Judge Nolan and the judges on the Utah Court of Appeals and the Utah Supreme Court in their judicial capacities. Accordingly, the court concludes that all of Plaintiff's claims against Judge Nolan and the judges on the Utah Court of Appeals and the Utah Supreme Court are barred by the doctrine of judicial immunity.

### D. Disability Claims

Based on a liberal reading of Plaintiff's complaint, it appears that Plaintiff also asserts claims under the Americans With Disabilities Act ("ADA"). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

> To state a claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability.

*Robertson*, 500 F.3d at 1193.

Even when liberally construed, Plaintiff's complaint fails to make any of those required allegations. Indeed, Plaintiff's complaint makes only general references to her "disability"[21] or her "medical disability"[22] but never actually identifies any disability. Accordingly, the court concludes that Plaintiff has failed to state claims under the ADA.

For all of the foregoing alternative reasons, the court has determined that Plaintiff's complaint fails to state any claims upon which relief can be granted. Accordingly, the court concludes that Plaintiff's complaint should be dismissed, in its entirety, pursuant to the IFP statute. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. Motion for Service of Process

Because the court has concluded that Plaintiff's complaint should be dismissed pursuant to the IFP statute, it logically follows that the court believes Plaintiff's motion for service of process should be denied.

### CONCLUSION AND RECOMMENDATION

In summary, **IT IS HEREBY RECOMMENDED:**

1. Plaintiff's motion for appointment of counsel[23] be **DENIED**.

---

[21] Docket no. 3 at 4, 5.

[22] Docket no. 3. at 4.

[23] *See* docket no. 4.

2. Plaintiff's complaint be **DISMISSED**, in its entirety, pursuant to the IFP statute for failure to state any claims upon which relief can be granted. *See id*. § 1915(e)(2)(B)(ii).

3. Plaintiff's motion for service of process[24] be **DENIED**.

\* \* \* \* \*

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See id*. § 636(b)(1)(C). The parties must file any objection to this Report and Recommendation within ten (10) days after receiving it. *See id*. Failure to object may constitute waiver of objections upon subsequent review.

DATED this 9th day of June, 2009.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[24] *See* docket no. 5.